## LINCOLN ELECTRIC CO. v. LINDE AIR PRODUCTS CO.

### No. 10641.

United States Court of Appeals
Sixth Circuit.

Nov. 29, 1948.

See, also, 74 F.Supp. 293.

John F. Oberlin, of Cleveland, Ohio (Oberlin & Limbach, Ashley M. Van Duzer, Thomas V. Koykka and James R. Stewart, all of Cleveland, Ohio, on the brief; McKeehan, Merrick, Arter & Stewart, of Cleveland, Ohio, of counsel), for appellant.

Loftus E. Becker, of New York City (Squire, Sanders & Dempsey, of Cleveland, Ohio, Cahill, Gordon, Zachry & Reindel and Loftus E. Becker, all of New York City, Harry J. Crawford, of Cleveland, Ohio, James A. Fowler, Jr., of New York City, and Richard R. Wolfe, of Chicago, Ill., on the brief), for appellee.

Before HICKS, Chief Judge, and ALLEN and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

The Lincoln Electric Company, appellant, brought suit for infringement of patent 1,589,017 issued for an invention for "Method and Means for Electric Arc Welding." The complaint was filed after expiration of the patent for damages claimed prior thereto, and, as amended, claimed $200,000 damages for infringement. Upon motion by appellee for summary judgment, the district court entered judgment in its favor on the ground that during the life of the patent, appellant unlawfully attempted to extend its monopoly thereunder to cover articles and things not comprehended thereby, and dealt with the patent illegally and contrary to public policy in such manner as to bar any recovery for infringement.

On appeal, the Lincoln Company contends that the factual showing made by appellee on its motion was insufficient to warrant the granting of a summary judgment, and that a patentee of a means, and of a process, is not guilty of misuse of its patent, where it licenses only purchasers of such means to use such a process.

With respect to the facts before the district court at the time of its granting of the motion for summary judgment, they may be summarized as follows: The means

patent claimed by the Lincoln Company is broadly defined as comprising (1) an electrode which may be a weld rod or wire, (2) means for supplying an inert gas to its arc, such as welding "melts," and (3) an energizing electric circuit connected with such electrode, which comprises certain described welding machines. The process patent was stated to be a method of arc welding which consists in surrounding the molten metal with an inert medium during the welding operations.

The motion for summary judgment was supported by the affidavit of appellee's Vice President, R. E. Cornwell, in which it was set forth that the specification of claims in the patent relied upon by appellant and the admissions of the President of appellant company showed that it was guilty of misuse of the patent because of its attempt to extend it to cover articles and things not comprehended thereby, and that it dealt with the patent illegally and in such manner as to bar recovery of damages. The affidavit further went on to recite that the President of appellant company had admitted that it had never granted any licenses under its patent but instead had exploited the patent through the sale of welding equipment and fluxes, and that such equipment and fluxes were not covered by the patent. In proof of these claimed illegal acts and admissions, it was set forth in the affidavit that James F. Lincoln, the President of appellant company, in certain legal proceedings pending in the United States District Court for the Northern District of Indiana, had previously testified by way of oral deposition, that appellant company had placed a notice respecting the Lincoln patent on the welding heads and rods which it sold, as well as on the bags of flux used in the welding operations, and on the welding machines themselves; that it had never granted licenses under the patent; that, prior to 1932, it had considerably more than 50% of the welding business in the country in its hands; that between 1932 and 1936, its business had amounted to approximately 50%; between 1936 and 1941, from 40% to 50%; between 1941 and 1945, about 35%; and that it was the largest manufacturer of welding equipment in the country. No counter affidavit was filed by appellant. From bills of particulars filed, it appeared that appellant was engaged in enforcing its patent rights under the process claims and the means claim against sellers of the unpatented elements which were used in the process, and included in the means described in the patent; and the charge of infringement made by appellant in these proceedings is based upon sales of such unpatented elements.

From the foregoing, it appears that appellant did not grant written licenses under the process claims and that it attempted to extend the monopoly over such process claims to welding equipment and materials not covered by the combination means claim. It also attempted to extend the monopoly over such process claims to welding compositions and fluxes whether or not they were covered by such means claim, as well as welding machines which were only one of the three elements of the combination means claim.

In entering judgment for appellee, the district court concluded that appellant had been guilty of misuse of the means claim of the patent, as well as the process claims. The means claim covered a combination of the three specified elements. These elements were unpatented. Implied licenses under the combination means claim, as well as under the process claims, could only be secured by purchasing these unpatented elements. Such a sale of the elements, each of which had a notice of the patent in question affixed or impressed therein, was the way in which appellant sought to enforce its monopoly under the patent and to exclude others from making sales of such elements.

We have examined the pleadings with special attention to the bill of particulars, the two amendments thereto, the motion for summary judgment, the petition for rehearing, and the orders allowing the amendments and for entry of judgment, and we are in agreement with the district court that there was no genuine issue of material fact between the parties, and that the cause was properly determined by judgment on the motion for summary judgment.

The law governing the disposition of the issue is not novel, and has been developed in

several leading cases decided by the Supreme Court in recent years.

The misuse of a patent, or a part of it, by the patentee in such a manner as to mislead the public or operate to its detriment, deprives the claim of the benefit of the patent laws. Altoona Publix Theatres, Inc. v. American Tri-Ergon Corp. et al., 294 U.S. 477, 55 S.Ct. 455, 79 L.Ed. 1005. To permit a patent owner to derive its profit, not from the invention on which the law gives it a monopoly, but from the unpatented supplies with which it is used, is wholly outside the scope of the patent monopoly. Carbice Corp. of America v. American Patents Development Corp. et al., 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819. " * * * every use of a patent as a means of obtaining a limited monopoly of unpatented material is prohibited. It applies whether the patent be for a machine, a product, or a process. It applies whatever the nature of the device by which the owner of the patent seeks to effect such unauthorized extension of the monopoly." Leitch Manufacturing Co. v. Barber Co., 302 U.S. 458, 463, 58 S.Ct. 288, 290, 82 L.Ed. 371. In Mercoid Corp. v. Mid-Continent Investment Co. et. al., 320 U.S. 661, 64 S.Ct. 268, 270, 88 L.Ed. 376, the court said:

"Ever since Henry v. A. B. Dick Co., 224 U.S. 1, 32 S.Ct. 364, 56 L.Ed. 645, Ann. Cas.1913D, 880, was overruled by Motion Picture Co. v. Universal Film Co., 243 U.S. 502, 37 S.Ct. 416, 61 L.Ed. 871, L.R.A. 1917E, 1187, Ann.Cas.1918A, 959, this Court has consistently held that the owner of a patent may not employ it to secure a limited monopoly of an unpatented material used in applying the invention. * * * Mr. Justice Brandeis, speaking for the Court, stated in the Carbice case (supra) that 'Control over the supply of such unpatented material is beyond the scope of the patentee's monopoly; and this limitation, inherent in the patent grant, is not dependent upon the peculiar function or character of the unpatented material or on the way in which it is used.' 283 U.S. page 33, 51 S.Ct. page 336, 75 L.Ed. 819. We now add that it makes no difference that the unpatented device is part of the patented whole."

In accordance with the foregoing, it appears that the use of the means and process of appellant's patent was conditioned upon the purchase of unpatented elements set forth in the combination means claim. Under the controlling authorities above cited, this was a misuse of the patent. Such misuse bars any recovery for damages claimed by appellant. Our disposition of the case makes it unnecessary to discuss the many interesting questions submitted in the briefs and on the argument with respect to the matter of contributory infringement.

The judgment of the district court is affirmed.